Filed 11/16/22  P. v. Staley CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B322519 |
| Plaintiff and Respondent, | (Fresno County Super. Ct. No. F19906389) |
| v. | |
| PAUL JAMES STALEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Fresno County, Houry Sanderson, Judge.  Convictions affirmed.  Sentence vacated, and cause remanded with directions.

Robert L. S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Ron Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Eric L. Christoffersen, Supervising Deputy Attorney General, and Ivan P. Marrs, Deputy Attorney General, for Plaintiff and Respondent.

———————————

A jury convicted Paul James Staley of raping C.P., the minor daughter of his live-in girlfriend, and on five additional counts of sexually assaulting the child over a two-year period beginning when C.P. was eight years old. The trial court sentenced Staley to a determinate state prison term of 37 years to be followed by an aggregate, consecutive indeterminate term of 55 years to life.

On appeal Staley does not challenge the sufficiency of the evidence to support his convictions. He argues only that the trial court improperly precluded him from impeaching C.P.'s credibility by questioning her about a statement made to a social worker when she was five years old that another man had touched her private parts when she was three years old. Staley also requests we review C.P.'s sealed mental health records to determine whether the court erred in finding they did not contain anything of probative value on the issue of C.P.'s credibility. Finally, Staley contends, because the court selected the upper term for each of the determinate sentences imposed on three counts, he is entitled to a new sentencing hearing in light of the amendments to Penal Code section 1170, subdivision (b),[1] made by Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3) (Senate Bill 567), which are properly applied to all cases not yet final on the legislation's January 1, 2022 effective date.

We affirm Staley's convictions and remand the matter for a new sentencing hearing.

---

[1] Statutory references are to this code unless otherwise stated.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Charges*

An amended information filed October 26, 2020 charged Staley with two counts of oral copulation or sexual penetration of a child 10 years old or younger (§ 288.7, subd. (b); counts 1 and 3), forcible oral copulation of a child 14 years old or younger (§ 287, subd. (c)(2)(B); count 2), sexual penetration by force of a child under 14 years old (§ 289, subd. (a)(1)(B); count 4), sexual intercourse with a child 10 years old or younger (§ 288.7, subd. (a); count 5) and forcible rape of a child under 14 years old (§ 261, subd. (a)(2); count 6). Staley pleaded not guilty to all the charges.

2. *Exclusion of Evidence of C.P.'s Prior Statement*

Prior to trial Staley's counsel moved for permission to cross-examine C.P. about her past statement that another man had touched her private parts, contending the claim was false and would undermine the credibility of C.P.'s accusations against Staley. The People objected, arguing it was not established that C.P.'s prior statement was false.

As reflected in two police reports, when C.P. was three years old, she lived with her biological father and his boyfriend, Charles. When C.P. was five years old and living with her mother, Charles accused C.P.'s mother of neglect and sought custody of C.P. A social worker interviewed C.P. with a police officer present. C.P. stated, when they had lived together, Charles touched her private parts two times: once in the shower while they both were naked, and once over her clothes. C.P. also said she saw Charles touch his own private parts in the shower.

A second officer conducted a follow-up investigation and attempted to interview Charles but was unable to locate him.

That officer concluded C.P.'s statement did not contain "any specific sexual allegations" against Charles. The investigator suspended the case "[b]ecause there is a lack of any real allegation against [Charles], coupled with the fact that I cannot locate or interview him about this report."

The trial court denied the defense motion, finding the two reports did not establish C.P.'s accusation was false and, even if false, any probative value of the evidence was outweighed by its prejudicial effect because the events occurred in a dissimilar factual situation and alleged different conduct from the charges against Staley. As to the latter point the court explained, "Doing the [Evidence Code section] 352 analysis of more probative than prejudicial effect, [the court] finds no probative value to an allegation made against someone during a heated custodial battle between her mother and the man in question. And that, in fact, finds no similarities in the nature of the events of what was said if anything was done by [Charles] against [C.P.]. So they will not be allowed in."

3. *The People's Evidence*

C.P. was born in June 2007. When C.P. was eight years old, Staley began dating her mother. C.P. and her mother moved into an apartment with Staley and C.P.'s three half sisters.[2]

C.P., 13 years old at the time of trial, testified Staley started touching her vagina when they were alone in the apartment. He would insert two fingers inside her vagina and move them back and forth. This contact was painful and frightened C.P. because she did not understand what was happening. Over a two-year period, beginning when she was

---

[2]     Staley is the father of two of C.P.'s half sisters.

4

eight years old, Staley digitally penetrated her vagina more than five times.

Staley eventually began inserting his penis into C.P.'s vagina, which he did on more than five occasions. The first time C.P. was scared and tried to scream "stop" and fight back by kicking and screaming, but Staley covered her mouth with his hand. Staley also forced his penis into C.P.'s mouth. She could not recall how many times, but it occurred more frequently than him putting his penis in her vagina and less frequently than him touching her vagina.

Staley warned C.P. not to tell anyone about his conduct. To try to avoid Staley, C.P. would ask to accompany her mother on errands, but their car did not have enough seats for C.P. and her sisters. C.P. also tried to lock herself in a bedroom and hide in a bunk bed. But Staley would unlock the door with a key, pull her out of the bed and carry her to his room.

C.P. tried to tell her mother after the assaults on one occasion, but Staley interrupted her and covered C.P.'s mouth to prevent her from speaking. C.P. also thought that her mother would not believe her. Although C.P. considered telling a teacher or a friend, she was too afraid of Staley to do so. He often hit C.P. and her sisters with a belt, and once pinned C.P. against a wall and choked her until she nearly lost consciousness.

When C.P. was 10 years old, Staley and C.P.'s mother moved the family to Texas. After that state's child protective services agency placed C.P. and her sisters into foster care, C.P. told her foster mother about Staley's actions.

4. *The Defense Evidence*

A social worker from the Texas Department of Family and Protective Services testified she interviewed C.P. in March 2017

5

about her home living conditions and C.P. did not mention anything about sexual abuse.

5. *Verdict and Sentence*

Following an 11-day trial, the jury found Staley guilty on all six counts. The parties stipulated that Staley had a prior conviction in 2002 for committing a lewd act on a 14- or 15-year-old child (§ 288, subd. (c)(1)).[3]

Pursuant to section 667.6, subdivision (d)(1), the court imposed full, separate and consecutive determinate state prison terms of 12 years on count 2 (the upper term for forcible oral copulation of a child 14 years old or younger), 12 years on count 4 (the upper term for sexual penetration by force of a child) and 13 years on count 6 (the upper term for forcible rape), for a total determinate term of 37 years. The court also imposed three consecutive indeterminate life terms: 15 years to life on each of counts 1 and 3 (oral copulation or sexual penetration of a child 10 years old or younger) and 25 years to life on count 5 (sexual intercourse with a child 10 years old or younger), for an aggregate indeterminate state prison term of 55 years to life.

Explaining its sentencing decision, the trial court identified several of the aggravating circumstances listed in California Rules of Court, rule 4.421: "The manner in which these crimes were carried out indicated planning, sophistication. Certainly took advantage of a very vulnerable individual entrusted in the care and custody of Mr. Staley. He was the adult to protect these

---

[3] In addition to his prior conviction under section 288, subdivision (c)(1), Staley had prior convictions for failure to register as a sex offender in 2005 (§ 290, subd. (f)(1)) and child cruelty in 2016 (§ 273a, subd. (a)).

children.  Not the adult to abuse and take advantage of them. And he certainly took advantage of this position of trust and confidence to commit these offenses.  The acts were, in fact, not violent in the sense that they were physical as to great bodily injury.  The injuries were emotional, psychological injuries.  And as [C.P.] very aptly stated, these are things she will have to work through, and I certainly wish her the best to do so.  The defendant also has prior convictions as an adult, and the defendant has continued to show poor performance on various levels of probation and or parole.  He has suffered a prior felony conviction.  He has been in prison.  He certainly has not complied with a civilized lifestyle and has taken advantage of child or children that were entrusted in his care.  These are violent sex crimes.  Multiple violent sex crimes with the same victim different occasions."  The court also noted that Staley had shown no remorse for his actions.

Staley filed a timely notice of appeal.

## DISCUSSION

1. *The Trial Court Did Not Abuse Its Discretion by Excluding Evidence of C.P.'s Prior Statement*

Evidence an alleged victim of sexual assault previously made a false report of assault or molestation is admissible to impeach the victim's credibility.  (*People v. Miranda* (2011) 199 Cal.App.4th 1403, 1424; see Evid. Code, § 1103, subd. (a)(1).) However, a prior accusation has no bearing on the victim's credibility unless the prior complaint was false.  (*People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1457; see *People v. Bittaker* (1989) 48 Cal.3d 1046, 1097, disapproved on another ground in *People v. Black* (2014) 58 Cal.4th 912, 919 ["[t]he value of the evidence as impeachment depends upon proof that the prior

7

charges were false"].) Additionally, "[t]he trial court has discretion under Evidence Code section 352 to exclude evidence of prior reports of sexual assault if proof of the falsity of the prior complaint 'would consume considerable time, and divert the attention of the jury from the case at hand.'" (*Miranda*, at p. 1424, fn. omitted.)

Staley characterizes then-five-year-old C.P.'s report that Charles had touched her private parts when she was three years old as false or provable as false and argues the trial court abused its discretion in precluding him from questioning her about it. There was no evidence C.P.'s statement was false. The investigating officer's conclusion there was "a lack of any real allegation" against Charles was, in effect, an evaluation of the legal significance of C.P.'s statement, not its truth or falsity; and his decision to suspend the case when he was unable to locate Charles similarly was unrelated to the trustworthiness of her statement. Absent a clear showing of falsity, questioning C.P. about her prior statement would have no bearing on her credibility. (See *People v. Miranda, supra,* 199 Cal.App.4th at p. 1425 [not an abuse of discretion for trial court to exclude social worker's conclusion that prior claim of sexual abuse of disabled girl was unfounded, where "evidence showing a prior false complaint was uncertain"]; *People v. Tidwell, supra,* 163 Cal.App.4th at p. 1457.)

Even if the evidence was marginally relevant on the issue of credibility, however, the trial court acted well within its broad discretion under Evidence Code section 352 to preclude any questioning about the matter. (See *People v. Clark* (2016) 63 Cal.4th 522, 586 ["'Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative

8

value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.]' [Citation.] 'A trial court's discretionary ruling under Evidence Code section 352 will not be disturbed on appeal absent an abuse of discretion'"].) Because there was no independent proof C.P.'s statement about Charles's conduct was false, admission of the evidence "would in effect force the parties to present evidence concerning . . . long-past sexual incidents which never reached the point of formal charges. Such a proceeding would consume considerable time, and divert the attention of the jury from the case at hand." (*People v. Bittaker*, *supra*, 48 Cal.3d at p. 1097 [no abuse of discretion for trial court to exclude impeachment evidence that a 17-year-old witness who rejected the advances of a rape and murder suspect made prior false charges of sexual molestation against two other men].)

In *People v. Tidwell*, *supra*, 163 Cal.App.4th 1447 the defense sought to impeach the victim with evidence of prior false complaints of rape. (*Id.* at p. 1452.) The court of appeal held, although "the evidence was relevant and admissible pursuant to Evidence Code section 1103, the trial court did not abuse its discretion by excluding the evidence because the evidence was weak on the issue of [the victim's] credibility and would require an undue consumption of time." (*Id.* at pp. 1456-1457.) "Although there was some evidence that [the victim] made inconsistent statements, there was no conclusive evidence that her prior rape complaints were false. The defense was unable to obtain evidence from the men that [the victim] accused, and inferences could be drawn either way from the circumstances of the prior incidents and [the victim's] statements concerning the incidents. In addition to the weaknesses in the evidence

9

concerning falsity of the rape complaints, admitting the evidence would have resulted in an undue consumption of time" spent litigating the veracity of the prior complaints. (*Id.* at p. 1458.)

Here, as discussed, C.P.'s statement was not proved false. And the accuracy of a general statement of inappropriate touching made by a five-year-old had little probative value as to the credibility of 13-year-old C.P.'s detailed and graphic descriptions of Staley's repeated sexual assaults over a two-year period, while exploring the earlier statement would have had a significant "potential for confusing the jury and consuming an undue amount of time" (*People v. Miranda, supra,* 199 Cal.App.4th at p. 1425), particularly given the prior statement's connection with custody "matters far afield from the charges in this case" (*id.* at p. 1426). As was true in *Tidwell*, "We therefore cannot say that the trial court abused its discretion in excluding the evidence based on the weak nature of the evidence of falsity of the complaints and the confusion of the jury and consumption of time it would have engendered for the parties to embark on the task of litigating the truthfulness of [the victim's] prior complaints." (*People v. Tidwell, supra,* 163 Cal.App.4th at p. 1458.)

Because the trial court's ruling was not an abuse of discretion under Evidence Code section 352, Staley's contention exclusion of the evidence violated his Sixth Amendment rights also fails. (See *People v. Brown* (2003) 31 Cal.4th 518, 545 ["reliance on Evidence Code section 352 to exclude evidence of marginal impeachment value that would entail the undue consumption of time generally does not contravene a defendant's constitutional rights to confrontation and cross-examination"].)

## 2. *Review of Mental Health Records*

Prior to trial, Staley subpoenaed C.P.'s mental health records and sought to examine the records for potential use at trial to impeach her credibility (to the extent they disclosed any preexisting condition or medication that may have led her to fabricate or hallucinate incidents of sexual assault and to discover whether she had named other people who allegedly molested her). The trial court conducted an in camera review of the records and heard testimony from an assessing clinician who conducted C.P.'s mental health evaluation in 2017. The court ruled the records contained no material relevant to the question of C.P.'s credibility.

At Staley's request we have reviewed C.P.'s mental health records and the sealed transcript of the trial court's in camera review. We agree with the trial court's ruling that there is no information properly to be disclosed to Staley. (See *People v. Abel* (2012) 53 Cal.4th 891, 935 [neither defendant's right of confrontation nor his right to due process was violated by nondisclosure of psychiatric records that provided no basis for impeaching the credibility of the testimony of the prosecution's witness].)

## 3. *Senate Bill 567's Amendments to Section 1170, Subdivision (b), Require a Remand for Resentencing*

### a. *Senate Bill 567*

In *Cunningham v. California* (2007) 549 U.S. 270, 293 (*Cunningham*) the United States Supreme Court held California's determinate sentencing law, which provided specified crimes were to be punished by one of three statutory terms of imprisonment (the lower, middle or upper term), violated a defendant's federal constitutional right to a jury trial under the

11

Sixth and Fourteenth Amendments to the extent it authorized the trial judge to find facts (other than a prior conviction) by a preponderance of the evidence that subjected a defendant to the possibility of an upper term sentence.  Following the Supreme Court's decision in *Cunningham*, the Legislature amended section 1170, subdivision (b), effective March 30, 2007 as urgency legislation, to eliminate the statutory presumption for the middle term and, instead, to grant the trial court full discretion to impose the lower, middle or upper term of the triad.  (Former § 1170, subd. (b); Stats. 2007, ch. 3. § 2 ["[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court"]; see *People v. Sandoval* (2007) 41 Cal.4th 825, 845.)

When Staley was sentenced in December 2020, section 1170, subdivision (b), which permitted the sentencing court to impose any of the three terms, lacked the requirement of weighing the circumstances in aggravation against those in mitigation before selecting the upper term and required the court only to state reasons for the decision to permit appellate review for abuse of discretion.  (See *People v. Sandoval*, *supra*, 41 Cal.4th at pp. 843, 847.)  As discussed, exercising this discretion the trial court selected the upper term for each of the three counts on which it imposed a determinate sentence.

Senate Bill 567, the Legislature's more fundamental response to the Sixth and Fourteenth Amendment issues addressed by the United States Supreme Court in *Cunningham*, *supra*, 549 U.S. 270 (see Sen. Com. on Public Safety, Rep. on Sen. Bill No. 567 (2021-2022 Reg. Sess.) April 13, 2021), amended section 1170, subdivision (b), effective January 1, 2022, to provide

12

in subdivision (b)(1), "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term except as otherwise provided in paragraph (2)."  Subdivision (b)(2) in turn provides, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. . . ."  Subdivision (b)(3) creates an exception to the limitation imposed by subdivision (b)(2):  "Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

Staley contends and the Attorney General agrees, as do we, that because Senate Bill 567's changes to section 1170, subdivision (b), limit the trial court's discretion to impose the upper term of imprisonment, they are ameliorative changes in the law (see *People v. Frahs* (2020) 9 Cal.5th 618, 628) and, as such, apply retroactively to nonfinal judgments under the principles articulated by the Supreme Court in *In re Estrada* (1965) 63 Cal.2d 740, 742.  (See *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109 ["section 1170's current statutory language applies retroactively in all nonfinal cases"]; *People v. Lopez* (2022) 78 Cal.App.5th 459, 465 ["[t]he People properly concede that Senate Bill No. 567's ameliorative amendments to section 1170, subdivision (b) apply retroactively to all cases not

13

yet final as of January 1, 2022"]; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039 [same]; see also *People v. Esquivel* (2021) 11 Cal.5th 671, 674 ["'When the Legislature amends a statute so as to lessen the punishment[,] it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final'"]; *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307.)

> b. *The trial court's error in relying on circumstances in aggravation not stipulated to by Staley or found true beyond a reasonable doubt at trial by the jury to impose upper term sentences was not harmless*

Staley argues his case should be remanded for resentencing because the upper term sentences on counts 2, 4 and 6 were not imposed in conformity with section 1170, subdivision (b), as amended by Senate Bill 567—that is, the trial court relied on circumstances in aggravation to which he had not stipulated and were not found true beyond a reasonable doubt by the jury that convicted him.[4] Although the Attorney General acknowledges

---

[4] If the trial court had imposed the now-presumptive middle term on each of the three counts with a determinate sentencing triad, the determinate portion of Staley's sentence would have been 31 years, rather than 37 years, to be followed in either case

Staley is entitled to the benefit of Senate Bill 567, he asserts there was no error because the trial court properly based its sentencing decision on Staley's stipulated prior conviction. In any event, the Attorney General also contends, any error was harmless because a jury would have found additional factors in aggravation true beyond a reasonable doubt. (See *People v. Sandoval*, *supra*, 41 Cal.4th at p. 838 [denial of the right to a jury trial on aggravating circumstances is reviewed under the harmless beyond-a-reasonable-doubt standard set forth in *Chapman v. California* (1967) 386 U.S. 18]; *Sandoval*, at p. 839 ["if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless"].)

The Attorney General is correct that under *Cunningham*, *supra*, 549 U.S. 270, a single aggravating factor established in a manner consistent with the Sixth Amendment and amended section 1170, subdivision (b)—here, Staley's stipulated prior felony conviction—would be sufficient as a matter of federal constitutional law to justify imposition of the upper term sentences even if the trial court also considered other aggravating factors. (See *People v. Scott* (2015) 61 Cal.4th 363, 404-405 ["as long as a single aggravating circumstance complying with *Cunningham* 'renders a defendant *eligible* for the upper

---

by the aggregate indeterminate term of 55 years to life. Regardless of the total aggregate sentence, Staley, who is now 52 years old, will be entitled to a parole suitability hearing under the Elderly Parole Program once he has served 20 years of continuous incarceration. (§ 3055, subd. (a).)

term sentence,' 'any additional factfinding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial'"]; *People v. Towne* (2008) 44 Cal.4th 63, 75.)

We also agree with the Attorney General that we can conclude beyond a reasonable doubt a jury, if asked, would have found true beyond a reasonable doubt that Staley took advantage of a position of trust to commit multiple sexual assaults against a particularly vulnerable victim.  (Cal. Rules of Court, rule 4.421(a)(3) & (11) [circumstances in aggravation; factors related to the crime].)  Whether a jury would have also found the crimes required planning and sophistication; involved great violence or disclosed a high degree of cruelty, viciousness or callousness; or indicated a serious danger to society—other circumstances in aggravation cited or implied by the trial court when sentencing Staley (see Cal. Rules of Court, rule 4.421(a)(1), (8) & (b)(1))—is far less clear.[5]  Those factors are inherently vague and subjective, "requir[ing] an imprecise quantitative or comparative evaluation of the facts."  (*People v. Sandoval, supra,* 41 Cal.4th at p. 840.)[6]

---

[5]    The trial court gave no explanation why it concluded Staley's acts indicated planning and sophistication and inconsistently stated Staley's acts were "not violent" physically and caused no great bodily harm (albeit inflicting serious emotional injury) and also they were "violent sex crimes."

[6]    The Supreme Court in *Sandoval* observed that a reviewing court "cannot necessarily assume that the record reflects all of the evidence that would have been presented had aggravating circumstances been submitted to the jury."  (*People v. Sandoval, supra,* 41 Cal.4th at p. 839.)  A defendant's incentive and

As a matter of state law, section 1170, subdivision (b), now requires all factors in aggravation actually relied upon by the trial court other than a prior conviction be found true beyond a reasonable doubt by the trier of fact or stipulated to by the defendant.  Thus, even though there was no federal constitutional violation because Staley could be sentenced to upper terms based on his prior conviction and his exploitation of a position of trust to sexually assault a particularly vulnerable victim, we can affirm imposition of those sentences only if we can conclude the trial court "*would* have imposed the upper term sentence even absent the error." (*People v. Zabelle, supra*, 80 Cal.App.5th at p. 1112.)  In particular, we must consider whether it is reasonably probable the trial court would have chosen a lesser sentence if it had relied only upon Staley's prior conviction and the several additional factors in aggravation the record overwhelmingly established.  (See *ibid*.; cf. *People v. Wandrey* (2022) 80 Cal.App.5th 962, 982, review granted Sept. 28, 2022, S275942 [even if one aggravating factor has been properly determined, the reviewing court must ask "whether the trial court would have exercised its discretion in the same way if it

---

opportunity at the sentencing hearing to contest any aggravating circumstances "were not necessarily the same as they would have been had the aggravating circumstances been tried to a jury" and, "to the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court."  (*Id.* at pp. 839-840.)

17

had been aware of the statutory presumption in favor of the middle term"].)[7]

<hr />

[7]  The courts of appeal have articulated a variety of harmless error standards to determine whether a defendant sentenced to an upper term under former section 1170 whose judgment is not final must be resentenced.  *People v. Flores* (2022) 75 Cal.App.5th 495, at pages 500 to 501, held simply the error is harmless if the reviewing court determines, beyond a reasonable doubt, that the jury would have found, beyond a reasonable doubt, at least one aggravating circumstance true.  *People v. Lopez*, *supra*, 78 Cal.App.5th at page 467, footnote 11, disagreed, holding the error is harmless if the reviewing court "can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied"; if not, the reviewing court must then determine whether it is reasonably probable the "trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied."  In *People v. Dunn* (2022) 81 Cal.App.5th 394, review granted October 12, 2022, S275655, the court, at pages 409 to 410, held the reviewing court "determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt"; if not, the reviewing court must then determine "(2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps."  (Fn. omitted.)  *People v. Zabelle, supra,* 80 Cal.App.5th at page 1112, upon which we generally rely, held the reviewing court must first determine beyond a

It is not clear from the trial court's comments what weight it gave to each of the multiple factors it articulated in sentencing Staley to the upper terms on the three triad counts. As in *People v. Zabelle, supra,* 80 Cal.App.5th 1098, the trial court here "gave no particular weight to any of its listed aggravating circumstances. Nor did it indicate whether its decision to impose the upper term was (or was not) a close call." (*Id.* at p. 1115; see *People v. Lopez, supra,* 78 Cal.App.5th at p. 468 ["trial court offered no indication that it would have selected an upper term sentence even if only a single aggravating factor or some subset of permissible factors were present"]; cf. *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [remand for resentencing proper if record does not "'clearly indicate[]'" the court would have imposed the same sentence under different sentencing presumption].)

Ameliorative changes to criminal sentencing law must be applied broadly, not narrowly. (*People v. Superior Court (Lara), supra,* 4 Cal.5th at p. 308 ["'in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final

---

reasonable doubt that the "jury would have found true at least one of the aggravating circumstances that the trial court relied on," and then determine whether, if the trial court relied on other aggravating circumstances, "it is reasonably probable that the trial court would have chosen a lesser sentence in the absence of the error," which requires determining "for each aggravating fact, . . . whether it is reasonably probable that the jury would have found the fact not true" and "then, with the aggravating facts that survive this review, . . . whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts."

19

and sentences that are not"].) Given the severity of the three consecutive indeterminate life terms imposed by the court (aggregating 55 years to life), if the aggravating circumstances considered by the trial court had been limited to Staley's prior conviction and those additional factors a jury inevitably would have found true, there is at least a reasonable probability the trial court would have adopted amended section 1170, subdivision (b)'s presumption in favor of using the middle term and imposed determinate state prison terms totaling 31 years, rather than 37 years. Accordingly, we vacate the sentence imposed and remand the cause for the trial court to resentence Staley.

## DISPOSITION

We affirm Staley's convictions, vacate his sentence and remand with directions for the trial court to resentence Staley in accordance with the terms of section 1170, subdivision (b)(2), and all other applicable, newly enacted ameliorative legislation.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.

20